# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PHILLIP DELGADILLO,

        Plaintiff,

v.                                                                                                          CV 13-01188 WJ/KK

RANDY DORMAN and JERRY ROARK,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE RULE 56(D) AFFIDAVIT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      THIS MATTER comes before the Court upon Defendant Randy Dorman's First Motion for Summary Judgment Based upon Absolute and Qualified Immunity & Memorandum in Support Thereof **(Doc. 45)**, filed August 20, 2014; Defendant Jerry Roark's Notice of Adoption by Reference of Dorman's motion **(Doc. 59)**, filed September 19, 2014; Plaintiff's Amended Motion for Leave of Court to File Rule 56(d) Affidavit of Counsel **(Doc. 78)**, filed October 24, 2014; and all responsive briefing thereto. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's motion is not well taken and, therefore, is **DENIED**, and that Defendants' motion is well taken and, therefore, is **GRANTED**.

### FACTUAL BACKGROUND

      Unless otherwise indicated, the facts described herein are not in dispute and are construed in the light most favorable to Plaintiff. At all relevant times, Dorman was the Advanced Records

Coordinator at Roswell Correctional Center ("RCC"), and Roark was Director of the New Mexico Corrections Department Adult Prisons ("NMCD").

On August 3, 2009, Plaintiff pleaded no contest in state court to two counts of Child Solicitation by Electronic Communication Device (Child 13-16), in violation of N.M.S.A. 1978, § 30-37-3.2, and two other charges. Plaintiff subsequently violated the terms of his probation, and in October 2011 the state court revoked his probation and ordered that he serve one year and two hundred eighty-nine days in NMCD custody. Plaintiff was also ordered to serve one year of parole. *See* **(Doc. 45 Ex. A)**.

Plaintiff was thereafter incarcerated at RCC, and no one disputes that pursuant to the Judgment and Sentence, Plaintiff was scheduled to be released from RCC on May 2, 2013, and begin his parole at that time. Exactly one month before that date, Dorman, in his capacity as Advanced Records Coordinator, reviewed Plaintiff's Judgment and Sentence and concluded that the one-year parole term listed on that document was incorrect. Dorman's conclusion was based on his purported understanding that SB 735, a legislative enactment passed in 2007 and signed by the Governor of New Mexico that year, modified § 31-21-10.1 to require that persons convicted under § 30-37-3.2 serve a five- to twenty-year parole term, even though this requirement does not appear in the codified statute.

Throughout the month of April 2013, Dorman repeatedly contacted Laurie Esquibel, an administrative assistant at the Fifth Judicial District Attorney's Office, by phone and email regarding the possibility of having Plaintiff's Judgment and Sentence amended to reflect a parole term in the five- to twenty-year range. On April 25, 2013, Esquibel informed Dorman that any changes to Plaintiff's Judgment and Sentence "must be ordered by the Court" and would require a hearing in which Plaintiff would be represented. In an email response, Dorman asked Esquibel

if the District Attorney's Office wanted him to place a detainer on Plaintiff in case the parole needed to be changed to a five- to twenty-year term "and [if] the Court wants him to stay in [NMCD custody] until he does get a plan?" Esquibel promised to check on the matter in an email response that was carbon-copied to Assistant District Attorney Stephanie Erickson.

On the morning of April 29, 2013, Erickson faxed a memorandum to RCC with Dorman's name in the attention line, reading in pertinent part, "Please place a detainer on [Plaintiff] and advise this office of any changes in his disposition. There is currently an issue pending regarding [his] parole time which needs to be resolved prior to his release from incarceration." **(Doc. 45 Ex. L)**.

Dorman followed up with Esquibel and Erickson, asking if Plaintiff would be picked up for his hearing on amending the Judgment and Sentence prior to or on his presumptive release date of May 2. Later that day, Dorman again wrote to Esquibel and Erickson, raising concerns expressed by "Santa Fe" that "if we discharge this inmate on 5-2-13 . . . how would you be able to send him back to serve the other 19 years that are left[?]"**(Doc. 45 Ex. K)**. There is no evidence of a substantive response from either Esquibel or Erickson.

On April 30, Dorman advised Nichol Madrid, an employee in NMCD's Offender Management Services, that he had not received an amended Judgment and Sentence for Plaintiff and that he did not think one would arrive in time. Still, Dorman instructed Madrid to "[p]roceed at this time with what is in the file." Later that day, Madrid wrote that "[p]er Director Roark [w]e are to hold [Plaintiff] for the purpose of obtaining the amended J&S. Please advise upon your receipt of the Amended J&S. Thank you." **(Doc. 45 Ex. M)**. Accordingly, Plaintiff was not released from Roswell Correctional Facility on May 2, 2013.

There is no evidence of any further activity to resolve the situation until June 26, 2013, when Erickson's secretary advised Dorman that the District Attorney's Office would seek a status hearing in state court on the matter of amending Plaintiff's Judgment and Sentence. The following day, the secretary informed Dorman that the status hearing had been set for late July. At the subsequent hearing, the state court judge concluded that Plaintiff's convictions did not qualify for the five- to twenty-year parole range pursuant to § 31-21-10.1, and he ordered Plaintiff's release from custody.

### PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint in December 2013 and filed his First Amended Complaint shortly thereafter. The latter pleading named Dorman and other individuals as Defendants and alleged, *inter alia*, violations of his Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.[1] In May 2014, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing all Defendants except Dorman and all claims except those alleging Eighth and Fourteenth Amendment violations.

The parties conducted a limited amount of discovery over the next few months. *See* (**Doc. 47**), Defendant's Motion for Protective Order, at 1-2 (asserting that the parties exchanged initial disclosures and written discovery requests in June 2014, that Dorman served answers to Plaintiff's discovery requests in July 2014, and that Dorman supplemented his discovery responses in August 2014); *see also* (**Doc. 54**), Plaintiff's First Motion to Compel (seeking to compel production of certain materials purportedly excluded from Dorman's written discovery responses). Dorman filed the instant Motion for Summary Judgment (**Doc. 45**) in August 2014,

---

[1] "[Section] 1983 creates a cause of action against individuals who violate federal law while acting 'under color of state law.'" *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) (quotation omitted).

arguing that he is entitled to absolute immunity or, alternatively, to qualified immunity from the claims against him.

On permission from the Court, Plaintiff subsequently filed the operative Second Amended Complaint **(Doc. 51)** in August 2014, alleging new facts and bringing the same remaining claims against Roark. Within less than a week, Roark had joined Dorman's motion by filing a Notice of Adoption by Reference and asserting that the same reasoning in Dorman's motion supports a grant of summary judgment in Roark's favor. *See* **(Doc. 59)**.

Plaintiff filed his response to Dorman's motion **(Doc. 68)** and to Roark's Notice of Adoption by Reference **(Doc. 70)** on October 7, 2014. Defendants filed their joint reply on October 24, 2014. **(Doc. 79)**.  However, several minutes before they did so, Plaintiff also filed an Amended Motion seeking leave to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d). **(Doc. 78)**.  Defendants filed a response to the latter motion **(Doc. 82)**, and Plaintiff filed a reply **(Doc. 85)**.

## DISCUSSION

### I. Plaintiff's Rule 56(d) Affidavit

The Court turns first to Plaintiff's motion requesting leave to file a Rule 56(d) affidavit authored by his attorney. Plaintiff's counsel posits in the affidavit that certain emails and attachments that have not yet been disclosed by Defendants will reveal that they "had already made the determination to detain Plaintiff" and that Defendants "knew they had no grounds upon which to hold Plaintiff past his true release date."

The Court finds several bases for denying Plaintiff's motion. First, as all parties acknowledge, Plaintiff's counsel failed to contact Defendants' counsel to determine whether they concurred in or opposed his motion. "[A] movant must determine whether a motion is opposed,

and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR-Civ. 7.1(a).

Second, Plaintiff filed his motion over two weeks after the extended deadline—set by the parties themselves—for responding to the motion for summary judgment. *See* (**Doc. 53**), Plaintiff's Notice of Agreed Extension of Time to Respond. Rule 56(d) affidavits are appropriate where a nonmovant, "for specified reasons, . . . cannot present facts essential to justify its opposition" to a summary judgment motion. *See* FED. R. CIV. P. 56(d). If Plaintiff was unable to present facts essential to his response to the pending motion, he should have notified the court prior to his deadline to file such a response, or he should have moved for another extension of his response deadline. Plaintiff failed to take either action, and as such his motion for additional discovery under Rule 56(d) is untimely.

Third, and relatedly, the Court cannot countenance Plaintiff's late insistence that he needs additional discovery to respond to Defendants' motion when his motion comes *after he has already responded to that motion*. Plaintiff filed his Rule 56(d) request over two weeks after having already filed his response to Defendants' motion. Plaintiff never mentions Rule 56(d) in his response, and nothing in that brief suggests that he is unable to present facts allowing him to oppose the motion for summary judgment. Indeed, the fact that he had already filed a response purporting to present such facts, complete with exhibits, weighs against that very argument. *Cf. Chavez v. City of Albuquerque*, No. 13-cv-557 WJ/SMV, Order Denying Plaintiff's Request for Limited Discovery Under Rule 56(d) (Doc. 48), at 7 (D.N.M. Mar. 7, 2014) (denying relief under Rule 56(d) where the nonmovant's own affidavit discussing the events underlying the suit already constituted "evidence that he believes precludes summary judgment").

Fourth, the Court observes that United States Magistrate Judge Kirtan Khalsa granted Defendants' motion to stay discovery, which they filed concurrently with their motion for summary judgment on the basis of absolute and qualified immunity. *See* (**Doc. 75**), Order Staying Discovery. As Judge Khalsa recognized, "[d]iscovery should not be allowed until the court resolves the threshold question" of qualified immunity when such a defense is raised. *See Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (citation omitted). "Rule 56([d]) is not a license for a fishing expedition, especially when summary judgment is urged based on a claim of qualified immunity." *Lewis v. City of Ft. Collins*, 903 F.2d 752, 579 (10th Cir. 1990). Instead, "Rule 56([d]) discretion must be limited when a summary judgment motion is based on qualified immunity because insubstantial lawsuits 'against government officials [should] be resolved *prior to discovery and on summary judgment* if possible.'" *Jones v. City and Cnty. of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988) (quotation omitted) (alteration in original). Accordingly, a Rule 56(d) affidavit in these circumstances must demonstrate a "connection between the information [Plaintiff] would seek in discovery and the validity of [Defendants'] qualified immunity assertion." *Id.*

Plaintiff's affidavit fails to meet this standard. Here, despite the operative stay on discovery, Plaintiff seeks unfettered access to Dorman's personnel file and a complete backup of emails and documents concerning the underlying events.[2] However, nowhere in his Rule 56(d) affidavit does Plaintiff's counsel draw a connection between these sought-after materials and the validity of Defendants' qualified-immunity defense. The closest he comes is to state that he "believes that there are emails that show" that Defendants intended to detain him even without

---

[2] Technically Plaintiff requests "the discovery that Plaintiff has sought . . . as briefed in Plaintiff's Motion to Compel [doc. 54]." That motion, which was denied without prejudice by Judge Khalsa, sought disclosure of Dorman's personnel file, emails to and from Dorman concerning the underlying events here, and all documents related to a June 27, 2013 NMCD investigation of these events.

7

the authorization of the District Attorney's Office. Even ignoring the fact that Plaintiff shows no connection between this aim and Dorman's personnel file, the question of whether Defendants acted at the direction of the District Attorney's Office goes toward their defense of *absolute* immunity. Defendants' defense of *qualified* immunity accepts, for the sake of argument, that they acted without such direction and simply contends that their decision to do so did not violate Plaintiff's clearly established constitutional rights. *See* **(Doc. 45)**, at 12-21. Plaintiff does not assert that the requested discovery would have any bearing on that position.

Without more, Plaintiff's affidavit cannot justify relief under Rule 56(d). Thus, for both procedural and substantive reasons, the Court denies Plaintiff's request for leave to file his Rule 56(d) affidavit and proceeds to the merits of Defendants' motion.

## II.     Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to absolute immunity or, alternatively, qualified immunity for their involvement in Plaintiff's detention after May 2, 2013. Because the Court concludes that Defendants' actions are protected by absolute immunity, the Court does not reach their qualified-immunity argument.

### A. Legal Standard

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In ruling on a motion for summary judgment, the Court may

neither make credibility determinations nor weigh the evidence but must view the record and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2011) (quotation omitted).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See, e.g.*, *Celotex*, 477 U.S. at 323; *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. *See, e.g.*, *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The existence of some alleged, immaterial factual dispute between the parties or a mere "scintilla of evidence" supporting the nonmoving party's position will not defeat an otherwise properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 252, 256.

  B. <u>Absolute Immunity</u>

Defendants assert that they are entitled to absolute immunity for the actions they took in detaining Plaintiff, claiming that they were acting as an integral part of the judicial process. Notably, Defendants do not assert that a NMCD Director and a prison facility's Advanced Records Coordinator are automatically entitled to absolute immunity for all actions. Rather, they claim that their actions in this case were entitled to such immunity because they were working under the director of prosecutors at the Fifth Judicial District Attorney's Office.

Absolute immunity applies to "officials whose special functions or constitutional status requires *complete* protection from suits." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (emphasis added). In particular, "all persons . . . who [a]re integral parts of the judicial process" are entitled to absolute immunity. *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983). This includes

prosecutors who act in their "role as an advocate." *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quotation omitted).

It is "the nature of the function performed, not the identity of the actor who performed it," that determines whether an individual should be protected by absolute prosecutorial immunity. *Kalina*, 522 U.S. at 127 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Absolute prosecutorial immunity therefore also extends to any person who acts "at the direction of [a] prosecutor who would be entitled to absolute immunity for such an action." *See Pleasant v. Lovell*, 876 F.2d 787, 807 (10th Cir. 1989) (citation omitted).

The functions protected by absolute prosecutorial immunity are those "'intimately associated' with 'initiating a prosecution [and] presenting the State's case.'" *Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir. 1985) (quoting *Imbler v. Pachtman*, 424 U.S. 409-430-31 (1976)). "Although identifying those acts entitled to absolute immunity is not always easy, the determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial role." *Id.* (citations omitted). Therefore, "unilateral action" outside of "the operation of the judicial process" cannot be protected by absolute prosecutorial immunity. *Snell v. Tunnell*, 920 F.2d 673, 688 (10th Cir. 1990) (citation omitted). Likewise, actions that "are simply too far removed on the continuum from the core prosecutorial functions of initiating and pursuing criminal prosecutions" are not entitled to such protection. *See Gagan v. Norton*, 35 F.3d 1473, 1476 (10th Cir. 1994). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell*, 920 F.2d at 687.

Accordingly, acts "that are primarily investigative or administrative in nature . . . are not so protected from suit" unless those acts are "necessary so that a prosecutor may fulfill his function as an officer of the court." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th

Cir. 1991) (citations omitted). For example, if a prosecutor plans a raid to obtain evidence, directs or participates a police investigation, gathers evidence that might "blossom into a potential prosecution," gives a *Miranda* warning to a suspect, or participates in an interrogation, she is engaging in "police-related" work that does not qualify her for absolute immunity. *See Rex*, 753 F.2d at 843-44 (citations omitted). Similarly, "a prosecutor who participates in an illegal search, issues a libelous press release, assists with an unlawful sale of seized property or orders a warrantless arrest ordinarily will not be entitled to absolute immunity." *Snell*, 920 F.2d at 693. The same is true when a prosecutor countermands a judge's orders in a *civil* action, not because she contravenes judicial authority, but because such activity is too far removed from "the core prosecutorial functions of initiating and pursuing *criminal prosecutions* to be covered by absolute immunity." *See Gagan*, 35 F.3d at 1476 (emphasis added); *see also Hart v. Hodges*, 587 F.3d 1288, 1298 n.11 (11th Cir. 2009) (citing *Gagan*).

By contrast, prosecutors may be found absolutely immune from "section 1983 claims that they offered false testimony or suppressed material at trial, filed charges without investigation or jurisdiction, filed groundless detainers, suppressed exculpatory evidence, refused to investigate prison complaints or threatened defendants with vindictive criminal prosecutions." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted). Similarly, a government lawyer who has been removed from a case by a judge is immune if she could have reasonably concluded that she owed a duty to her client to take further action. *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 504 (3d Cir. 1997). Immunity may even extend to "post-conviction" actions, provided that the prosecutors are personally involved in the relevant post-conviction proceedings. *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) (citing *Houston v. Partee*, 978 F.2d 362, 366-67 (7th Cir. 1992)). It is prosecutor's authority to conduct the acts in question, rather than the propriety

11

of the acts themselves, that shield her from suit. *See Snell*, 920 F.2d at 687 (citing *Imbler*, 424 U.S. at 427) (noting that even "those with valid claims against dishonest or malicious government officials" must be denied relief when absolute immunity applies).

Courts outside the Tenth Circuit have persuasively applied absolute immunity to a prosecutor's decision to issue a detainer for the purpose of securing a prisoner for a pending criminal matter. *E.g.*, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) (transfer from federal to state custody to facilitate state prosecution); *Childress v. Skaggs*, No. 1:13-CV-115-M, 2013 WL 6633959 (W.D. Ky. Dec. 17, 2013) (unpublished) (extradition for prosecution in another state); *Peterson v. Tomaselli*, 469 F. Supp. 2d 146 (S.D.N.Y. 2007) (transfer from federal to state custody to allow for resentencing in state court). This is the case even when the detainer is "baseless." *See Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979).

Plaintiff insists that the prosecutor here would not be entitled to immunity for issuing a detainer to pursue an amendment to his Judgment and Sentence since judicial proceedings had not already been initiated. However, Plaintiff does not identify a single decision where a grant or denial of immunity was premised on the existence of judicial proceedings prior to the contested action. To the contrary, courts have granted absolute immunity to prosecutorial actions taken prior to the initiation of judicial proceedings, provided that these actions are "integral to the judicial process." *See Dacey v. Dorsey*, 568 F.2d 275, 278 (2d Cir. 1978) (citing *Imbler*, 424 U.S. 409) (granting immunity for a prosecutor's decision not to pursue an injunction); *Atkins v. Lanning*, 556 F.2d 485, 488 (10th Cir. 1977) (citing *Imbler*, 424 U.S. at 421, 427-28) (acknowledging prosecutorial immunity for naming the wrong person in an arrest warrant).

As recognized by the cases cited above, absolute immunity may attach if a prosecutor issues a detainer to secure a prisoner for further judicial proceedings. And Plaintiff expressly

concedes that the prosecutor's decision to seek amendment of his Judgment and Sentence, whether or not proper, was an activity "integral to the judicial process." Given these factors, it is plain that absolute immunity would attach to the prosecutor's decision to issue a detainer to secure Plaintiff's presence at the hearing to amend his Judgment and Sentence.

The next question, then, is whether Defendants were acting "at the direction of" the prosecutor. *See Pleasant*, 876 F.2d at 807 (citation omitted). Despite Plaintiff's insistence to the contrary, there is no conflicting evidence as to this question. Dorman may have been unusually persistent in seeking to ensure that an additional four to nineteen years of parole would be added to Plaintiff's sentence, and it was Dorman himself who raised the possibility of the District Attorney's Office placing a detainer on Plaintiff in an April 25, 2013 email to Esquibel. Yet, that email reflects Dorman's recognition that RCC could detain Plaintiff only if "the DA want[ed] to place a detainer on him." The evidence in the record, even when viewed in the light most favorable to Plaintiff, shows that Defendants would not and did not act to detain him until Erickson sent the April 29, 2013 memorandum to RCC instructing the facility to do so. *See* (**Doc. 45 Exs. K, L**). Whether or not Defendants independently wanted to place a detainer, this evidence shows that Defendants only did so "at the direction of" the District Attorney's Office.[3]

Finally, citing to an unpublished Tenth Circuit decision, Plaintiff claims that Defendants were not entitled to absolute immunity because they knew the detainer to be wrongful. In the case in question, the trial court dismissed plaintiff's claims against two judges and a prosecutor on absolute-immunity grounds and against sheriff's deputies for failure to state a claim. *See Burrows v. Cherokee Cnty. Sheriff's Office*, 38 F. App'x 504, 506 (10th Cir. 2002) (unpublished). The Tenth Circuit affirmed the dismissal of the judges and prosecutor but

---

[3] The Court again observes that the parties conducted a limited amount of discovery in the months leading up to the filing of the instant motion.

reversed the dismissal of the deputies, finding that the plaintiff had properly stated a claim that the deputies had enforced a detainer and extradition order despite knowing that the order was invalid. *See id.* at 506-07. Though Plaintiff cites the case to argue that the deputies (and by analogy Defendants) could not entitled be to absolute immunity for enforcing an invalid detainer, the Tenth Circuit never addressed whether absolute immunity might have applied to the deputies' actions; it is not even clear that the deputies raised this defense. *Cf. id.* Thus, even if this unpublished decision were binding on the Court, it does not support Plaintiff's position.

In short, the prosecutor's decision to issue a detainer for Plaintiff in order to secure his appearance at a hearing to amend his Judgment and Sentence was integral to the judicial process, and Defendants detained Plaintiff only at the prosecutor's direction. Accordingly, Defendants are entitled to absolute immunity for all claims against them.

## CONCLUSION

For the reasons herein stated, Plaintiff's Amended Motion for Leave of Court to File Rule 56(d) Affidavit of Counsel **(Doc. 78)** is **DENIED**, and Defendants' First Motion for Summary Judgment Based upon Absolute and Qualified Immunity & Memorandum in Support Thereof **(Docs. 45, 59)** is **GRANTED**. A separate final judgment consistent with this opinion shall issue.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE