# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

PHILLIP DELGADILLO,

       Plaintiff,

v.                                        No. CV 13-01188 WJ/KK

RANDY DORMAN and JERRY ROARK,

       Defendants.

### AMENDED MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART
### PLAINTIFF'S OPPOSED MOTION TO RECONSIDER,
### AND DENYING IN PART AND DEFERRING RULING IN PART ON
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[*]

       THIS MATTER comes before the Court upon Plaintiff Phillip Delgadillo's Opposed Motion to Reconsider **(Doc. 91)**, filed January 27, 2015. That motion seeks reconsideration of Defendants' Motion for Summary Judgment, **(Doc. 45)**, which the Court previously granted on January 20, 2015, *see* **(Doc. 89)**. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's motion is well taken in part and, therefore, is **GRANTED IN PART AND DENIED IN PART** as herein described. On reconsideration, the Court also finds that Defendants' summary judgment motion is not well taken in part; accordingly, the Court **DENIES IN PART AND DEFERS RULING IN PART** on that motion.

_____

[*] This Memorandum Opinion and Order has been amended to note the correct name and docket number for the Motion for Summary Judgment, **(Doc. 45)**, that is under reconsideration.

### BACKGROUND

Given the previous Memorandum Opinion and Orders filed in this action, the Court assumes familiarity with the underlying facts concerning Plaintiff's conviction, his violation of his probation terms, and his subsequent reincarceration. For present purposes, it is enough to note that pursuant to a state court Judgment and Sentence ("J&S"), Plaintiff was ordered to serve a set period of incarceration and one year of parole.

No one disputes that by the terms of the J&S, Plaintiff was to be released from incarceration on May 2, 2013. One month before that date, Defendant Randy Dorman, as the Advanced Records Coordinator where Plaintiff was imprisoned, concluded that Plaintiff's J&S imposed a parole term that was too short. Dorman spent the next month corresponding with the Fifth Judicial District Attorney's Office ("DA's Office") regarding the possibility of having Plaintiff's J&S amended to reflect a parole term of five to twenty years, rather than the one year initially imposed.

As Plaintiff's scheduled release date approached, someone decided to keep Plaintiff incarcerated past his scheduled release date until the matter of the allegedly incorrect J&S had been resolved. A hearing was eventually held, at which time a state court judge concluded that the original one-year parole term was correct and that the J&S did not need to be amended. Plaintiff was released on July 30, 2013, eighty-nine days beyond his scheduled release date.

Plaintiff originally sued Dorman and other Defendants raising, among other claims, allegations of Eighth and Fourteenth Amendment violations. After the Court dismissed other claims and Defendants, the parties conducted a limited amount of discovery, including an exchange of initial disclosures, written discovery requests, and some discovery responses. With

the Court's permission, Plaintiff subsequently filed the operative Second Amended Complaint, alleging new facts and bringing the same remaining claims against Defendant Jerry Roark, who was at all relevant times the Director of the New Mexico Corrections Department Adult Prisons ("NMCD").

## MOTION FOR SUMMARY JUDGMENT

On January 20, 2015, the Court granted a motion for summary judgment filed by Dorman and joined by Roark. *See* Memorandum Opinion and Order ("MOO"), (**Doc. 89**). Although Defendants had raised a defense of qualified immunity, the Court did not reach this issue. Instead, based on the evidence before it at the time, the Court determined that Dorman and Roark were entitled to absolute prosecutorial immunity. The Court also denied Plaintiff's request under Federal Rule of Civil Procedure 56(d) to allow for additional discovery to be conducted.

The Court's grant of summary judgment was grounded in the documentary evidence submitted by Defendants and turned over to Plaintiff as part of the early discovery exchanges. At this point, the Court quotes from its MOO in relevant detail:

> On April 25, 2013, [Laurie] Esquibel [an administrative assistant at the DA's Office] informed Dorman that any changes to Plaintiff's [J&S] "must be ordered by the Court" and would require a hearing . . . . In an email response, Dorman asked Esquibel if the District Attorney's Office wanted him to place a detainer on Plaintiff in case the parole needed to be changed . . . "and [if] the Court wants him to stay in [NMCD custody] until he does get a plan?" . . . .

> On the morning of April 29, 2013, [Assistant District Attorney Stephanie] Erickson faxed a memorandum to [Roswell Correctional Center] with Dorman's name in the attention line, reading in pertinent part, "Please place a detainer on [Plaintiff] and advise this office of any changes in his disposition. There is currently an issue regarding [his] parole time which needs to be resolved prior to his release from incarceration." . . . .

> Dorman followed up with Esquibel and Erickson, asking if Plaintiff would be picked up for his hearing on amending the [J&S] prior to or on his presumptive release date . . . . Later that day, Dorman again wrote to Esquibel and Erickson, raising concerns expressed by "Santa Fe" that "if we discharge [Plaintiff] on 5-2-

13 . . . how would you be able to send him back to serve the other 19 years that are left[?]" . . . .

MOO, at 2-3.

It is important to highlight the next line of the MOO: at the time that this matter was before the Court, there was "<u>no evidence of a substantive response from either Esquibel or Erickson.</u>" MOO, at 3 (emphasis added).

On April 30, Dorman advised Nichol Madrid, an employee in NMCD's Offender Management Services, that he had not received an amended [J&S] for Plaintiff and that he did not think one would arrive in time [*i.e.*, before the May 2 release date]. Still, Dorman instructed Madrid to "[p]roceed at this time with what is in the file." Later that day, Madrid wrote that "[p]er Director Roark [w]e are to hold [Plaintiff] for the purpose of obtaining the amended J&S. Please advise upon your receipt of the Amended J&S. Thank you." . . . .

MOO, at 3.

Once again, the Court highlights an important subsequent line: "<u>There is no evidence of any further activity to resolve the situation until June 26, 2013</u>, when Erickson's secretary advised Dorman that the DA's Office would seek a status hearing in state court on the matter of amending Plaintiff's [J&S]." MOO, at 4 (emphasis added).

The evidence available to the Court at the time led to the inevitable conclusion that Roark, and therefore Dorman, were acting on the instructions in Erickson's detainer memorandum in deciding to incarcerate Plaintiff past May 2, 2013. The Court also recognized that a prosecutor would be entitled to absolute immunity for issuing a post-conviction detainer to pursue a valid court hearing. Since Defendants appeared to be acting at Erickson's direction, the Court concluded that Defendants were entitled to absolute immunity. *See* MOO, at 9-14.

### NEWLY DISCOVERED EVIDENCE

However, in the months preceding the Court's decision, Plaintiff actively sought to secure additional evidence that might bolster his case. Although the Court stayed discovery when

Defendants raised their qualified-immunity defense, Plaintiff remained convinced that major gaps existed in the evidence submitted by Dorman in his initial disclosures and discovery responses. Accordingly, Plaintiff began sending out requests for additional relevant records pursuant to the New Mexico Inspection of Public Records Act ("IPRA"), NMSA 1978, § 14-2-1 *et seq.*, and successfully fended off Defendants' challenge to those requests, *see* Order Denying Defendants' Amended Motion for Expedited Protective Order, **(Doc. 87)**.

According to Plaintiff, the first responses to its IPRA requests came from the New Mexico Attorney General's Office, which provided "the only responsive emails [it] had" and suggested that NMCD or the DA's Office might be the appropriate records custodian for the evidence sought. NMCD thereafter provided IPRA responses that "were clearly copies of the same emails which had been [earlier] produced by Defendants."

On January 20, 2015—the same day that the Court filed its MOO granting summary judgment to Defendants—Plaintiff received IPRA responses from the DA's Office. Although these responsive records included email communications between persons other than Defendants, they also included emails where Dorman had been either a sender or recipient. Importantly, a number of those emails had *not* been provided by Defendants—either to Plaintiff in their initial disclosures and discovery responses, or to the Court with their summary judgment motion.

Of particular relevance is an email sent on April 30, 2013. That afternoon, after the exchange between Dorman and Madrid mentioned earlier, Dorman sent an email to Esquibel that read as follows:

> Laurie, I have just received a directive from my Director of Adult Prisons [Roark] to hold inmate Delgadillo (because he is supposed to have a 5-20 year parole term); until we have received an amended J&S for the 5-20 year parole. As part of the initiative of the new Administration, we are making sure that no inmate is

Paroled or Discharged before the end of their terms. I am to work deligently in obtaining said Amended J&S.

*See* (**Doc. 91-2**), at 14-15 (typographical and spelling errors in original).

## MOTION FOR RECONSIDERATION

On January 27, 2015, one week after the Court granted Defendants summary judgment, Plaintiff filed the instant motion for reconsideration arguing that the newly received IPRA responses support reconsideration of that order. For relief, Plaintiff requests that "this Court will reconsider its ruling as set forth in its Memorandum Opinion and Order, set aside the Final Judgment, and issue an Order revoking summary judgment in favor of Defendants[,] and for any other relief this Court deems appropriate under the circumstances." (**Doc. 91**), Motion, at 13-14 (internal citations omitted).

Defendants oppose Plaintiff's motion, arguing principally that the new documents submitted by Plaintiff "merely supplement, and are cumulative to, the fact record established in Defendants' Motion for Summary Judgment." In their unsworn response brief, Defendants also state that Dorman did not intentionally or maliciously hide any email communications, and that he does not in fact remember deleting any emails, though Defendants concedes this must have happened prior to initial disclosures. Defendants also argue that Dorman and NMCD were not required to retain the emails in question, contending that those messages were merely transitory in nature. Finally, Defendants maintain that even if the Court were to grant Plaintiff's motion, they remain entitled to summary judgment on the basis of qualified immunity.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not provide a mechanism pursuant to which a party may file a "motion to reconsider." *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir. 1997) (quotation omitted). Plaintiff proposes a variety of sources of authority for a motion to

reconsider here, including Rule 56(h), which allows for "appropriate sanctions" when a litigant's affidavit or declaration in support of a motion for summary judgment is submitted in bad faith. However, Plaintiff cites no authority for the proposition that Rule 56(h) provides an appropriate basis for a motion to reconsider a grant of summary judgment, and the Court is not aware of any such authority. Accordingly, the Court will not apply that Rule in resolving Plaintiff's request for reconsideration.

Plaintiff also asks the Court to construe his request under either Rule 59(e) or Rule 60(b)(3). The Tenth Circuit typically construes motions to reconsider under these rules. *See Emmons*, 107 F.3d at 764 (quotation omitted). "If the motion is filed within [twenty-eight] days of the district court's entry of judgment, the motion is treated as a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e)." *Id.* (quotation omitted).[1] Otherwise, the motion is construed under Rule 60(b), which covers grounds for relief from final judgments. *See id.* Since Plaintiff filed his motion seven days after the Court's entry of judgment, the Court will treat the motion as one filed under Rule 59(e).

In truth, though, the legal standard for a motion to reconsider under either Rule 59(e) or Rule 60(b) is the same—such a motion is justified by an intervening change in controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted). In either case, the standard for motions to reconsider based in particular on new evidence are "essentially the same." *See FDIC v. Arciero*, 741 F.3d 1111, 1117 (10th Cir. 2013) (citation omitted). And under both rules, "a motion for reconsideration is appropriate where the court has

---

[1] Although the original passage limited Rule 59(e) to motions filed within ten days of the entry of judgment, Rule 59(e) itself has since been amended to cover motions filed within twenty-eight days. *See* FED. R. CIV. P. 59(e).

misapprehended the facts, a party's position, or the controlling law." *See Servants of Paraclete*, 204 F.3d at 1012 (citation omitted).

**ANALYSIS**

**I.      Reconsideration of Rule 56(d) Ruling**

Plaintiff briefly attacks the Court's rejection of his motion for relief under Rule 56(d). In its MOO, the Court held that Plaintiff's Rule 56(d) motion had omitted recitation of the requisite good-faith request for concurrence, was filed in an untimely fashion, and failed to meet the standard for allowing additional discovery when qualified immunity is alleged and discovery is stayed on that basis. Here, Plaintiff reasserts his previously raised argument that the Magistrate Judge implicitly gave him permission to "supplement" his response to the motion for summary judgment with a Rule 56(d) motion. However, he does not contest the Court's other bases for denying that motion. Accordingly, the Court denies Plaintiff's present motion insofar as he seeks to have the Court reconsider its denial of his Rule 56(d) motion.

**II.     Reconsideration of Summary Judgment Ruling**

Plaintiff argues that the Court should reconsider the facts underlying its grant of summary judgment to Defendants. He cites as grounds "new evidence previously unavailable" and "the need to correct clear error or prevent manifest injustice," but he essentially wraps these together into an argument based on new evidence. To succeed, then, Plaintiff must show

> (1) the evidence was newly discovered since the trial; (2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence was not merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) . . . a new trial with the newly discovered evidence would probably produce a different result.

*See Arciero*, 741 F.3d at 1117 (quoting *Dronsejko v. Thornton*, 632 F.3d 658, 670 (10th Cir. 2011)).[2]

Plaintiff asserts, and Defendants do not appear to dispute, that the evidence presented with his motion is newly discovered and that he was diligent in discovering it. The Court agrees. By all indications, Plaintiff only recently received the relevant new evidence as a result of a non-party's responses to his IPRA requests, which he initiated before discovery had been stayed.

Nor can Plaintiff's new evidence be described as cumulative or impeaching. It is true that the April 30 email from Dorman to Esquibel essentially communicates the contents of Madrid's email to Dorman earlier that day. The difference, though, is that the later email suggests that Dorman and Roark did not believe themselves to be acting on the instructions of the DA's office. Otherwise, Dorman would have no reason to inform Esquibel of the reason for the retainer and less still to characterize the actions as based on Roark's directive. Rather than being cumulative or impeaching, that email at the very least presents a genuine issue of fact as to whether Defendants were acting at Erickson's direction.

Relatedly, the April 30 email is plainly material to a defense of absolute immunity, as the message goes toward the validity of Defendants' claim that they were acting at the direction of the DA's office. Finally, because the communication between Dorman and Esquibel presents a genuine issue of material fact as to the absolute immunity defense, the Court would not have been able to grant Defendants summary judgment on that basis had the email message been available to it.

---

[2] Plaintiff asserts in a footnote that there is no authority in the Tenth Circuit for concluding that all five of these requirements must be met in order for his motion to be granted. This argument is frivolous. The Tenth Circuit plainly used the conjunctive "and" to demonstrate that movants must satisfy each of these factors.

Having met all five *Arciero* factors, Plaintiff has established that reconsideration of the Court's MOO granting summary judgment to Defendants is warranted on the basis of newly discovered evidence. To this extent, then, Plaintiff's motion to reconsider is granted.

### III.    Motion for Summary Judgment Reconsidered

As previously noted, although Defendants' Motion for Summary Judgment raised defenses of absolute immunity and qualified immunity, the Court only ruled on the absolute immunity defense. Given the Court's finding above that a genuine issue of material fact exists as to whether Defendants are entitled to absolute immunity, the Court must on reconsideration deny Defendants' motion for summary judgment on absolute-immunity grounds.

This does not resolve the question of qualified immunity. Having considered the parties' briefs on this matter, the evidence, and the relevant law, the Court concludes that oral argument as to this question is appropriate. Accordingly, the Court will for now defer ruling on Defendant's Motion for Summary Judgment on the question of qualified immunity and, in an Order filed contemporaneously with this Memorandum Opinion and Order, will set this matter for oral argument.

### CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED that Plaintiff's Opposed Motion for Reconsideration (**Doc. 91**) is GRANTED with respect to the Court's grant of summary judgment to Defendants on the basis of absolute immunity but is DENIED in all other respects.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (**Doc. 45**) is DENIED as to Defendants' absolute-immunity argument. Pending oral argument, the Court will DEFER RULING on Defendants' motion with respect to their qualified-immunity argument.

IT IS FURTHER ORDERED that the Clerk of the Court reopen this case.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE