**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

PHILLIP DELGADILLO,

          Plaintiff,

v.                                   No. CV 13-01188 WJ/KK

RANDY DORMAN and JERRY ROARK,

          Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

      THIS MATTER comes before the Court upon Defendants'[1] First Motion for Summary Judgment Based Upon Absolute and Qualified Immunity, **(Doc. 45)**, filed August 20, 2014, and all relevant subsequent briefing; and upon the Court's Memorandum Opinion and Order Granting in Part and Denying in Part Plaintiff's Opposed Motion to Reconsider, and Denying in Part and Deferring Ruling in Part on Defendants' Motion for Summary Judgment, **(Doc. 103)**, filed April 10, 2015. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well taken and, therefore, is **GRANTED**.

## BACKGROUND

      Given the voluminous filings in this case, the Court assumes familiarity with the underlying facts concerning Plaintiff's conviction, his violation of his probation terms, his subsequent reincarceration, and his detention past his projected release date. The bulk of this section serves to briefly describe the relevant procedural developments to date.

---

[1] Although the motion was originally filed only by Defendant Randy Dorman, his fellow Defendant Jerry Roark joined this motion shortly after he entered the case. _See_ **(Doc. 59)**, Joinder.

On January 20, 2015, the Court granted the instant motion for summary judgment on the basis of absolute immunity. **(Doc. 89)**, Memorandum Opinion and Order.  Almost three months later, the Court granted Plaintiff's motion for reconsideration, reopened consideration of the instant motion, and rejected Defendants' absolute-immunity argument. *See* **(Doc. 105)**, Amended Memorandum Opinion and Order. However, the Court deferred a full ruling on Defendants' qualified-immunity argument in that same motion and set the matter for a hearing. *See id.* Five days later, Defendants filed a "Notice of Supplemental Authority" to the instant motion, *see* **(Doc. 107)**, to which Plaintiff responded a week later, *see* **(Doc. 109)**.

On June 19, 2015, the Court held a hearing on the qualified-immunity portion of Defendants' motion for summary judgment. Plaintiff's counsel began by arguing that clearly established law prohibited Plaintiff's continued detention past the expiration of his sentence, citing unpublished Tenth Circuit decisions and published opinions from other circuits. Plaintiff's argument was twofold—that Defendants had no authority to place a detainer on him, and alternatively that any such authority was exceeded when Defendants detained him past the date required by his Judgment and Sentence ("J&S"). Defense counsel responded that authority for Plaintiff's continued detention existed under NMSA 1978, § 31-21-10(E), and that Defendants did not act with deliberate indifference.

At the conclusion of this hearing, the Court noted that Defendants had never cited to § 31-21-10(E) in their briefing; nor had they cited to any other state authority that allegedly authorized the detention of Plaintiff past his projected release date. Since the existence of such authorities appeared to be relevant to whether qualified immunity was appropriate, the Court ordered Defendants to file a short supplemental brief clarifying "the[] authorities that Roark and Dorman reasonably relied on such that it would show that they were not deliberately indifferent."

Plaintiff was also given an opportunity to file a response brief. Both parties timely filed these briefs. *See* (**Doc. 116**), Defendants' Supplemental Brief; (**Doc. 118**), Plaintiff's Response.

**LEGAL STANDARDS**

### I.      Summary Judgment

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted).  In ruling on a motion for summary judgment, the Court may neither make credibility determinations nor weigh the evidence. *See Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2011) (quotation omitted).

Under normal circumstances, the party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See, e.g.*, *Celotex*, 477 U.S. at 323; *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. *See, e.g.*, *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The existence of some alleged, immaterial factual dispute between the parties or a mere "scintilla of evidence" supporting the nonmoving party's position will not defeat an otherwise properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 252, 256.

## II.      Qualified Immunity

Additional steps are taken when a summary judgment motion raises a defense of qualified immunity. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* The court may consider either of these prongs before the other "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Rojas v. Anderson*, 772 F.3d 1000, 1003 (10th Cir. 2013) (internal quotation marks omitted).

A right is only considered to be clearly established when there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation omitted). The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Thus, although there does not need to be a case precisely on point for the right in question to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Quinn v. Young*, 780 F.3d 998, 1004-05 (10th Cir. 2015); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

At the summary judgment stage, a court generally must "view the facts and draw reasonable inference 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts," *id.* unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," *id.* at 380. "However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record . . . ." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citation omitted). "In short, although [courts] will review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal citations omitted).

### DISCUSSION

Plaintiff brings two constitutional claims against Defendants under 42 U.S.C. § 1983,[2] alleging cruel and unusual punishment in violation of the Eighth Amendment and loss of liberty without due process in violation of the Fourteenth Amendment. Defendants claim qualified immunity as to both claims. The Court addresses them separately.

### I.      Eighth Amendment

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. U.S. CONST. amend. VIII. Plaintiff asserts that his detention past his projected release date constituted the kind of punishment prohibited by the Eighth Amendment.

---

[2] "[Section] 1983 creates a cause of action against individuals who violate federal law while acting 'under color of state law.'" *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) (quotation omitted).

Since Defendants raise the defense of qualified immunity, the Court begins by examining whether any such Eighth Amendment rights have been clearly established.

    A.  <u>Clearly Established Constitutional Right</u>

Although the "clearly established" prong of the qualified immunity analysis is generally determined by reference to Supreme Court or Tenth Circuit precedent, the parties do not cite any published cases on point from either court. However, in unpublished decisions, the Tenth Circuit has twice recognized that imprisonment past one's scheduled release date may constitute cruel and unusual punishment under the Eighth Amendment. *See McGregor v. Thurlow*, 435 F. App'x 779, 780 (10th Cir. 2011) (unpublished) ("[I]f [someone] is being incarcerated after he should have been released under [state] law, then his confinement violates his right to due process, and it may also constitute cruel and unusual punishment."); *Mitchell v. N.M. Dep't of Corr.*, 1993 WL 191810, 996 F.2d 311, at *3 (10th Cir. 1993) (unpublished table decision) ("Imprisonment beyond one's term can constitute cruel and unusual punishment for purposes of the Eighth Amendment." (citation omitted)).

Further, Plaintiff has cited a significant number of decisions from other circuits to argue that the "clearly established weight of authority from other courts" supports a cause of action under the Eighth Amendment when a prisoner has been incarcerated past his release date. *See Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001) (accepting the general proposition that "incarcerating a prisoner beyond the termination of his sentence without penological justification [may] violate[] the Eighth Amendment as cruel and unusual punishment" (citations omitted)); *Moore v. Tartler*, 986 F.2d 682, 686 (3d. Cir. 1993) ("Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and unusual punishment."); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.

1985) (en banc) ("Detention of [a person] beyond the termination of his sentence [i]s undoubtedly punishment within the constitutional meaning of that term. . . . Detention beyond the termination of a sentence could constitute cruel and unusual punishment . . . ."); *see also Shorts v. Bartholomew*, 255 F. App'x 46, 54-55 (6th Cir. 2007) (citing *Moore* and *Haygood* in analyzing a prisoner's claim of incarceration past his court-ordered release date); *Golson v. Dep't of Corr.*, 1990 WL 141470, 914 F.2d 1491, at *1 (4th Cir. 1990) (unpublished table decision) ("Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment.").

At the hearing, Defendants did not dispute that clearly established law allows for an Eighth Amendment cause of action under § 1983 when a prisoner is held past his maximum release date without penological justification. Moreover, the parties agreed at the hearing that the Third Circuit case in *Moore* set out the appropriate factors to consider:

> First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must show a ca[us]al connection between the official's response to the problem and the unjustified detention.

*See* 986 F.2d at 686.

The Third Circuit's standard for these cases has been cited approvingly in several other circuits. *See Shorts*, 255 F. App'x at 55 (citing *Sample v. Diecks*, 885 F.2d 1099, 1102-03 (3d. Cir. 1989)); *Campbell*, 256 F.3d at 702 (citing the first two prongs). Moreover, this standard aligns with that set forth by the Ninth Circuit in *Haygood*, which considers the first two factors of the Third Circuit's test and implies the causation element. *See* 769 F.2d at 1355 (finding adequate evidence of notice and failure to act to support an Eighth Amendment § 1983 claim); *see also Golson*, 914 F.2d 1491, at *1 (applying the Ninth Circuit's standard). Finally, the Court

observes that this standard tracks loosely with the more commonly applied standard for deliberate indifference to a serious medical need, which requires conscious disregard of an objectively serious deprivation. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

Reviewing the clearly established weight of authority, including unpublished Tenth Circuit decisions and opinions from other circuits, the Court concludes that a prisoner's clearly established Eighth Amendment right of protection against cruel and unusual punishment is violated when he is held past his release date, as calculated pursuant to his operative judgment and state law, as a result of deliberate indifference. Relying on this clearly established weight of authority, the Court adopts the Third Circuit's standard for such claims: to prevail, a prisoner alleging confinement past his release date must show (1) that the defendant prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) that the defendant demonstrated deliberate indifference to this problem by either failing to act or taking only ineffectual action under the circumstances without penological justification; and (3) a causal connection between the prisoner's problem and the unjustified detention. *See Moore*, 986 F.2d at 686; *Campbell*, 256 F.3d at 700.

B.  Violation of Constitutional Right

With this standard in mind, the Court turns to the arguments presented by the parties in their numerous filings.[3]

---

[3] In addition to the parties' arguments raised at the hearing held on June 19, 2015, the relevant filings that the Court has considered include the following:

- Defendant's Motion for Summary Judgment (**Doc. 45**), Plaintiff's response (**Doc. 68**), and Defendants' reply (**Doc. 79**);
- portions of Plaintiff's Motion to Reconsider (**Doc. 91**), Defendants' response (**Doc. 93**), and Plaintiff's reply (**Doc. 96**);
- exhibits to Plaintiff's Notice of Supplemental Authority (**Doc. 97**), Defendants' response (**Doc. 100**), and Plaintiff's reply (**Doc. 101**);
- Defendants' Notice of Supplemental Authority (**Doc. 107**) and Plaintiff's response (**Doc. 109**); and
- Defendants' Supplemental Brief (**Doc. 116**) and Plaintiff's response (**Doc. 118**).

i.   *Knowledge*

The parties do not dispute that Defendants had accurately determined, by reference to both Plaintiff's judgment and the good-time credits he had earned, that Plaintiff's release date under the judgment was appropriately calculated as falling on May 2, 2013. At the motion hearing, Defendants suggested that the operative release date to consider would be the maximum court-ordered release date under the judgment, without any reference to good-time credits. Because Defendants contend that Plaintiff could have been incarcerated until August 4, 2013, if good-time credits were not calculated, they imply that he cannot bring an Eighth Amendment claim since he was released before that date. However, New Mexico recognizes that prisoners are entitled to good-time credits as a matter of law, subject to statutory and administrative procedures relating to the revocation or forfeiting of such credits. *See Brooks v. Shanks*, 118 N.M. 716, 717, 720 (1994) (recognizing a due-process claim when good-time credits are withheld in violation of statute or regulation). Because there is no argument that Defendants miscalculated Plaintiff's release date or that any good-time credits had been forfeited or revoked pursuant to appropriate procedures, the Court concludes that the relevant date to consider is May 2, 2013, Plaintiff's release date as calculated by Defendants.

From there, the first prong of the *Moore* test is easily resolved. The record establishes that Defendants were aware that Plaintiff was to be released on May 2, 2013, as they had calculated this release date themselves. *See, e.g.*, (**Doc. 45 Ex. K**), Email Chain, at 3 (April 17, 2013 email from Defendant Dorman to Laurie Esquibel). Moreover, because Defendants were aware of this release date, they were also aware that Plaintiff's detention past that date would create a risk of unwarranted punishment being inflicted. Accordingly, the first *Moore* factor is satisfied.

ii.      *Deliberate Indifference*

Next, Plaintiff must show that Defendants responded to Plaintiff's problem by either failing to act or acting ineffectually, in such a way that indicates deliberate indifference to Plaintiff's plight. To make this showing, Plaintiff must demonstrate that his prolonged incarceration was without penological justification and was the result of deliberate indifference. *See Campbell*, 256 F.3d at 700. Plaintiff's position is that Defendants' decision to hold him for eighty-three days past his calculated release date, without taking any action to ensure that this outcome would be avoided, was inherently the product of deliberate indifference to the risk that he might suffer unwarranted punishment. He also contends that there was no penological justification for any continued incarceration.

Defendants' principal counter to Plaintiff's argument has largely been that they reasonably relied on their understanding of Senate Bills ("SB") 528 and 735, two acts passed by the New Mexico Legislature and signed by the Governor in 2007, and on a 2012 memorandum from the Governor touching on unrelated provisions of these laws. Defendants interpreted these bills and the Governor's memorandum to mean that Plaintiff should have received five to twenty years of parole, rather than the one-year parole period that appeared in his judgment.[4] Defendants also reached this conclusion based on their review of New Mexico Corrections Department ("NMCD") Policy CD-40101(H)(1)(f), which lists Plaintiff's offense of conviction as one requiring a parole term of five to twenty years. In short, Defendants' position is that they reasonably believed it was contrary to state law for Plaintiff to serve any less than five to twenty years of parole, and as such they were holding him to ensure that his J&S could be modified to

---

[4] Interestingly, Plaintiff's J&S originally provided for a parole term of five to twenty years; it was the New Mexico Corrections Department that requested a shorter parole term of one year. *See* (**Doc. 91 Ex. B**), Email Chains, at 15 ("On August 18, 2011, [the Fifth Judicial District Attorney's office] amended the J&S entered in this cause *at the request of the DOC* – changing the parole time from 5-20 to one (1) year." (emphasis added)).

reflect this parole term before he was released from custody. They further argue that they were entitled by state law to continue Plaintiff's incarceration in this manner.

Defendants point to several statutes that they say can be read to broadly provide a penological justification for Plaintiff's continued detention past his release date. The most relevant one, which is also the one cited by Defendants at the hearing, is NMSA 1978, § 31-21-10(E), part of the New Mexico Probation and Parole Act. That provision reads in relevant part:

> Every person while on parole shall remain in the legal custody of the institution from which the person was released, but shall be subject to the orders of the [parole] board. . . . . The board shall . . . require as a prerequisite to release the submission and approval of a parole plan. **If an inmate . . . does not have an approved parole plan, the inmate shall not be released** and shall remain in the custody of the institution in which the inmate has served the inmate's sentence, excepting parole, **until such time as the period of parole the inmate was required to serve, less meritorious deductions, if any, expires**, at which time the inmate shall be released from that institution without parole, **or until such time that the inmate evidences acceptance and agreement to the conditions of parole as required or receives approval for the inmate's parole plan or both**.

NMSA § 1978, 31-21-10(E) (emphasis added).

By all accounts, Plaintiff had already served in-house the one-year parole set forth in his J&S, as he had not been able to get an approved parole plan. *See, e.g.*, (**Doc. 91 Ex. B**), Email Chains, at 15 (email from Defendant Dorman to Laurie Esquibel). Thus, if Plaintiff is correct that the one-year parole term stated in his J&S controls, then § 31-21-10(E) would provide no basis for his continued incarceration. On the other hand, if the appropriate term of parole was five to twenty years, then § 31-21-10(E) would provide penological justification for Plaintiff's continued incarceration since no approved parole plan for this term was in place.

In *Campbell*, the Seventh Circuit concluded that prison officials who had miscalculated a prisoner's release date did not prolong the prisoner's detention "without penological justification," because his continued incarceration would have been appropriate if their initial calculation of release dates had been correct. *See* 256 F.3d at 700. In other words, penological

justification for the extended detention existed because the prison officials had reasonably interpreted state law and the prisoner's continued incarceration would have been justified by law had their interpretation been correct. *See id.* Since qualified immunity protects governmental actors who reach reasonable, though possibly mistakenly, interpretations of law, *see Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009), the Court must determine whether Defendants' interpretation of New Mexico's parole statutes—concluding that state law required Plaintiff to serve five to twenty years' parole—was at least reasonable. If so, Defendants had a penological justification for holding Plaintiff past his release date.

a.      SB 528 AND SB 735

Defendants first rely on their interpretation of two bills introduced in the 2007 legislative session, Senate Bill (SB) 528 and SB 735. Both enactments were intended to change language in NMSA 1978, § 31-21-10.1, the statute governing parole terms for sex offenders, as well as other statutes. SB 735 required in relevant part that child solicitation by electronic communication— Plaintiff's offense of conviction—be listed as a sex offense in § 31-21-10.1, and it further required that a parole term of five to twenty years be imposed for all sex offenders under that statute. This bill was passed by the Legislature and signed by the Governor, and it was scheduled to take effect July 1, 2007. *See* N.M. LAWS Ch. 68, § 4.

However, SB 528 also affected § 31-21-10.1 by specifying a parole period of five to twenty years for certain specific sex offenses, and a parole period of five years to life for other specific sex offenses. Importantly, that act did not list child solicitation by electronic communication device as an offense that is eligible for these parole terms; indeed, in contrast to SB 735, that crime was not listed as a sex offense at all. This act was also passed by the

Legislature and signed by the Governor, and it too was scheduled to take effect July 1, 2007. *See* N.M. LAWS Ch. 69, § 4.

The Governor signed SB 528 after signing SB 735, and ultimately only the changes laid out in SB 528 were compiled in New Mexico Statutes Annotated ("NMSA") at § 31-21-10.1. Meanwhile, the full text of SB 735 was simply set forth in an annotation to that statute. *See* NMSA 1978, § 31-21-10.1 note (2007).

According to NMSA 1978, § 12-1-8, when two acts are enacted during the same session of the legislature amending the same section of law and the acts cannot be reconciled, only "the last act signed by the governor shall be presumed to be the law," and the full text of "any conflicting section of any earlier signed act" is noted in an annotation to the statute. NMSA 1978, § 12-1-8(B). This is exactly the course taken by the New Mexico compilation commission upon the enactment of SB 528 and SB 735. By contrast, had the acts been reconcilable, the state compilation commission would have incorporated the reconcilable provisions into the last signed act and compiled that text in the NMSA, with only the differences between the acts logged in a compiler's note. *See* NMSA 1978, § 12-1-8(A). As such, the text of SB 528 alone can be "presumed to be the law," at least with respect to § 31-21-10.1.[5]

Although Defendants cite § 12-1-8 in their briefing, they are not legal professionals, and they cannot be presumed to know the intricacies of state law concerning situations when two conflicting laws are almost simultaneously enacted. However, under a plain reading of § 31-21-10.1(A), as amended by SB 528, the crime of child solicitation by electronic communication

---

[5] After the Governor's April 2012 memorandum raised concerns regarding other provisions of these acts, *see infra*, the Legislature and Governor enacted legislation that effectively incorporates the language from both SB 528 and SB 735 in the relevant statutes. *See, e.g.*, N.M. LAWS Ch. 152, § 1 (2013) (modifying NMSA 1978, § 29-11A-3). By contrast, since the compilation of SB 528 in § 31-21-10.1 in 2007, this statute has not been amended further. As of the date of this writing, § 31-21-10.1 still does not require a parole term of five to twenty years for child solicitation by electronic communication device.

device is not listed as a crime for which a minimum parole term of five years is required. Defendants' knowledge of a conflicting enactment to the contrary does not overcome the only reasonable reading of the applicable law in this case, particularly where that conflicting provision was never compiled in the NMSA and never presumed to be the law in New Mexico.

        b.     Governor's Memorandum

Defendants' citation to an April 2012 memorandum from the Governor to state criminal lawyers and judges is equally unavailing. That letter set forth the Governor's legal position that persons convicted of child solicitation by electronic communication device must register as sex offenders pursuant to NMSA 1978, § 29-11A-4, because SB 735 added that offense as a sexual offense to another related statute. *See* (**Doc. 45 Ex. D**), Memorandum from Gov. Susana Martinez to Chief District Court Judges, District Attorneys and District Defenders.

Assuming this to be a correct interpretation of law, or even a reasonable but mistaken interpretation of law, the Governor's memorandum only addressed the registration requirement set forth in one provision of SB 735; that memorandum did not discuss, and had no bearing on, the separate section changing the parole requirements for persons convicted of child solicitation by electronic communication device. *See id.* (observing that SB 735 required sex-offender registration for person convicted of that offense and stating that "*[t]his provision*" (emphasis added) was now "the law of the land"). *Compare, e.g.*, N.M. Laws Ch. 68, § 2(E) (expanding the list of sex offenses triggering the requirement for county sheriffs to maintain registration information under the New Mexico Sex Offender Registration and Notification Act, NMSA 1978, § 29-11A-5), *with id.* § 4 (addressing parole terms for sex offenders in NMSA 1978, § 31-21-10.1).[6] Thus, nothing in the Governor's April 2012 memorandum suggested that persons

---

[6] The Governor sent this memorandum in April 2012. Almost one year later, the Legislature passed (and the Governor signed) an act that clarified that child solicitation by electronic communication device is a sex offense

convicted of child solicitation by electronic communication device must serve a parole term of five to twenty years.

        c.      NMCD POLICY CD-040101

Finally, Defendants point to their reliance on NMCD Policy CD-040101(H), which requires the Records Coordinator (in this case Defendant Dorman) to audit inmate records at appropriate intervals. *See* (**Doc. 45 Ex. E**), Policy, at 2-3; (**Doc. 45 Ex. F**), Answers to Interrogatories, at 3. In particular, NMCD Policy CD-040101(H)(1)(f) requires the Records Coordinator to "[e]nsure that the Judgment and Sentence is for the correct term of parole." That same provision specifically states that persons convicted of child solicitation by electronic communication device must receive "a parole term of not less than five (5) years and not in excess of twenty (20) years." *See* (**Doc. 45 Ex. E**), Policy, at 3.

The Court again recognizes that Defendants are not legal professionals. Under these circumstances, where a Corrections Department Policy expressly stated that Plaintiff's offense of conviction requires a parole term of five to twenty years, it was reasonable for Defendants to rely on that Policy in determining that such a parole term was required under state law.

In supplemental briefing, and later at the motion hearing, Defendants pointed to a Seventh Circuit case, *Armato v. Grounds*, 766 F.3d 713 (7th Cir. 2014). There, a prisoner secured an agreed post-judgment order that provided for a specific release date; however, in reviewing two other orders entered concurrently, a prison records supervisor calculated an earlier release date that had already passed. *See id.* at 717. Still, prison officials refused to release the prisoner because each post-judgment order specifically exempted him from mandatory supervised release, which they believed was required under state law. *See id.* at 717-18. After the

---

subject to registration in the State of New Mexico. *See* N.M. LAWS Ch. 152, § 1 (2013). This same act did not address the parole term for persons convicted of that offense. *See id.*

attorney general refused to pursue a modification of the sentencing orders, the prison officials released the prisoner before the date set in the handwritten order. *See id.* at 718-19.

The Seventh Circuit affirmed the dismissal of the prisoner's Eighth Amendment claim, noting that state law regarded agreed orders to be conclusive and recognizing that the prisoner was released before the firm date set forth in the agreed order. *See id.* at 720-21. However, in additional language, the court determined that even if the prisoner's release date had already passed, the defendant officials had not acted with deliberate indifference. Relying on language from its earlier holding in *Campbell*, the Seventh Circuit concluded that the officials had not "deliberately ignor[ed] [the prisoner's] detainment without penological justification" because they reasonably believed that state law required a term of supervised release for the prisoner, they made every effort to modify the sentencing orders accordingly, and they released the prisoner after exhausting the avenues for pursuing such modification. *See id.* at 721.

In some respects, the Court is not persuaded by what is essentially dictum in *Armato*. Although the prison officials in that case plainly acted with a penological *purpose* in seeking to detain the prisoner past his release date, the Seventh Circuit does not point to any penological *justification* for doing so. *Cf. Campbell*, 256 F.3d at 700 (holding that prison officials who had miscalculated a prisoner's release date did not confine the prisoner past his correct release date "without penological justification," because his continued incarceration would have been appropriate if their initial calculation of release dates had been correct). Yet, this case differs from *Armato* in that Defendants *can* point to NMSA 1978, § 31-21-10(E) as a legal authority that justified Plaintiff's continued detention. Further, in other crucial respects, this case and *Armato* are on-point. Just as the prison officials in that case reasonably interpreted state law to require a term of supervised release for the prisoner, Defendants reasonably relied on a Corrections

Department Policy in concluding that state law required a five- to twenty-year parole term. Moreover, just as in *Armato*, the record reflects that Defendants worked diligently to acquire what they reasonably concluded was an appropriate parole term for Plaintiff, and they released him once they had exhausted their avenues for pursuing that modification.

In their most recent round of supplemental briefing, the parties argue over whether NMCD Policy CD-040101(H) authorized Defendants to hold Plaintiff past his scheduled release date. The Court agrees with Plaintiff that if Defendants believed his parole term to be incorrect, this Policy at most allowed them to "make every attempt to get an amended [J&S]." *See* **(Doc. 45 Ex. E)**, Policy, at 3. However, because the Court has determined that § 31-21-10(E) vested Defendants with authority to hold Plaintiff until an appropriate parole plan had been approved, it is not relevant that the Policy did not grant similar authority; what matters is that the Policy served as a reasonable basis for Defendants to have concluded that state law required a five- to twenty-year parole term for Plaintiff. Once they reached this reasonable interpretation of state law concerning Plaintiff's parole term, they reasonably determined that § 31-21-10(E) authorized Plaintiff's continued detention. Accordingly, Plaintiff has not established that his continued incarceration was without penological purpose.

The Court further holds that Plaintiff has not shown that Defendants reacted to his plight with deliberate indifference. Such a standard "requires more than negligence[;] rather the defendant must meet essentially a criminal recklessness standard, that is, ignoring a known risk." *Armato*, 766 F.3d at 721 (citation and internal punctuation omitted); *see also Farmer*, 511 U.S. at 836. Here, however, the record reflects that after concluding (mistakenly) that Plaintiff needed to serve a longer parole term, Defendant Dorman remained in frequent contact with the Fifth Judicial District Attorney's office until that office had scheduled a court hearing to consider the

matter. *See, e.g.*, (**Doc. 45 Exs. N & O**), Emails Chains; (**Doc. 91 Ex. B**), Email Chains, at 7. After the state district court concluded (correctly) that Plaintiff had served the parole term mandated by state law, Defendants released him from custody. In light of this record, Plaintiff has failed to show that Defendants took no more than ineffectual action in response to his risk of unwarranted punishment.

In summation, § 31-21-10(E) provided Defendants with authority to detain Plaintiff until an approved parole plan for the appropriate parole term was in place. Because Defendants reasonably relied on NMCD Policy CD-040101 in concluding that state law required Plaintiff to serve a parole term of five to twenty years, their continued incarceration of Plaintiff pursuant to § 31-21-10(E) was done with penological justification. Moreover, because Defendants' understanding of state law was reasonable in light of the Policy, and because they made every effort to resolve the perceived problem with Plaintiff's J&S in a timely fashion, Plaintiff has failed to show that they acted with deliberate indifference.

In the absence of deliberate indifference, Plaintiff cannot show that Defendants violated his Eighth Amendment rights. *See, e.g.*, *Moore*, *See* 986 F.2d at 686. Accordingly, Defendants are entitled to qualified immunity and summary judgment as to Plaintiff's Eighth Amendment claim.

## II.     Fourteenth Amendment

The Fourteenth Amendment to the United States Constitution provides, *inter alia*, that states may not deprive any person of liberty without due process of law. U.S. CONST. amend. XIV, § 1. Plaintiff claims that Defendants' actions violated this provision, while Defendants again claim qualified immunity as to this claim.

Although Plaintiff bears the burden of establishing that Defendants violated his clearly established constitutional rights, *see Martinez*, 563 F.3d at 1088, Plaintiff gives short shrift to his Fourteenth Amendment claim in his briefing. He does cite in passing a few cases from other jurisdictions that arguably stand for the existence of a Fourteenth Amendment claim for continued incarceration of a prisoner past his release date. *See* **(Doc. 68)**, Response, at 20-21 (citing *Golson*, 914 F.2d 1491, at *1; *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004); *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1562-63 (11th Cir. 1993)),[7] as well as a Supreme Court decision concerning the issue of detention of a prisoner on the basis of misidentification, *see id.* at 21 (citing *Baker v. McCollan*, 443 U.S. 137 (1979)). However, Plaintiff makes no effort to apply the due process analysis in those cases to the facts before the Court, choosing instead to focus on the deliberate-indifference standard applicable to Eighth Amendment claims. *See id.* at 20-22. Thus, without deciding whether it is clearly established that the Fourteenth Amendment is viable on the specific facts presented in this case,[8] the Court concludes that Plaintiff has failed to show that a violation of any such Fourteenth Amendment rights occurred. *See Pearson*, 555 U.S. at 236 (allowing the Court to consider either prong of the qualified-immunity analysis in any appropriate order). Accordingly, Defendants are entitled to qualified immunity and summary judgment on Plaintiff's Fourteenth Amendment claim.

## CONCLUSION

For the reasons stated herein, IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment, **(Doc. 45)**, is GRANTED.

---

[7] Although the Ninth Circuit's decision in *Haygood* also supports a due process claim if deliberate indifference is not established, *see* 769 F.2d at 1354, Plaintiff does not cite the case for this proposition.

[8] The Court observes that the only Tenth Circuit case suggesting the existence of such a claim, *see McGregor*, 435 F. App'x at 780, is unpublished. Thus, even if Plaintiff had cited this decision, it could not suffice to support the existence of a clearly-established constitutional right. *See Quinn*, 780 F.3d at 1005 (generally requiring "an on-point Supreme Court or published decision" to satisfy the clearly-established prong of the qualified-immunity analysis). Likewise, because *Baker* concerned entirely different facts than those presented in this case, *cf.* 443 U.S. at 138-42, it too cannot serve to meet the clearly-established requirement, *see Quinn*, 780 F.3d at 1005.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE